Mark GRAY, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.

No. 94 Civ. 0082 (TJM) (RWS).

United States District Court, N.D. New York.

Oct. 6, 1995.

[1]. Pursuant to Public Law No. 103–296, §§ 105(a)(1), 106(d), 106(f), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995, and the Court may enter an order for substitution of parties. Accordingly, Shirley S. Chater, Commissioner of Social Security, has been substituted as the defendant in this action for the Secretary of Health and Human Services and the title Commissioner has been used for any references to the Secretary in the context of this case throughout this opinion.

Peter W. Hill, Oneonta, New York, for Plaintiff.

Thomas J. Maroney, United States Attorney, William H. Pease, Assistant United States Attorney, Office of the United States Attorney for the Northern District of New York, Syracuse, New York, for Defendant.

KOELTL, District Judge: [2]

The plaintiff Mark Gray ("Gray") filed this action on January 24, 1994 pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), and Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), to review a final determination by the Commissioner of Social Security ("Commissioner") denying him a period of disability, Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. On August 18, 1994, the plaintiff submitted his brief, and on September 29, 1994, the Commissioner submitted her brief; pursuant to the Standing Order of the Northern District of New York, the briefs are construed as cross-motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

The issue in this case is whether substantial evidence supports the finding by the Commissioner that the plaintiff is not entitled to a period of disability, SSDI benefits or SSI benefits.

**I.**

The plaintiff, who was born on November 29, 1966, (R. at 38), claims that since May 1992, he has suffered from problems with his knees that render him disabled. (R. at 112.) Gray's left knee has a "tendency to sublux out of place." (R. at 43.) When his knee subluxes, or gives out, it causes Gray "stab-

---

**2.** Pursuant to the authorization of Chief Judge Jon O. Newman of the Court of Appeals for the Second Circuit, this case was transferred from the Northern District of New York to this Court for the purpose of disposing of the pending motion by order of Chief Judge Thomas J. McAvoy of the Northern District of New York dated November 5, 1994.

bing" pain. (R. at 45–46.) At the time of the hearing before the Administrative Law Judge ("ALJ") on May 21, 1993, Gray's knee problems had necessitated seven surgeries, (R. at 43), had resulted in numerous emergency visits to the hospital, (R. at 8, 148, 207, 230, 237, 240), and had continued to cause Gray constant pain. (R. at 45.) The ALJ who conducted the hearing concluded that Gray has a "severe musculoskeletal impairment." (R. at 20.) In detailing Gray's "long history of disorders of his left knee," the ALJ noted that Gray had undergone, among other surgeries, a partial meniscectomy to the left knee in 1982, a transarthroscopic synovectomy in 1983, a left tibia tubricle elevation with left iliac graft in 1988, and exploration of the left patellar tendon with reefing of the patellar tendon mechanism in September 1992. (*Id.*) The ALJ also observed that Gray has chronic instability of the left patella with patellofemoral arthritis and a disruption of the left quadriceps patellar mechanism, that Gray has been diagnosed as having patellofemoral chondromalacia of the right knee, and that an MRI revealed inflammation of the patellar tendon at the distal aspect of the patella. (*Id.*)

After completing high school, Gray served in the Navy until he was discharged because of his knee problems. (R. at 39–40.) Following his discharge, Gray was employed continuously at various jobs from 1984 until May 1992. (R. at 103.) Most recently, Gray owned a pet store. (R. at 40.) Prior to that, he had been, among other things, a retail manager in various stores and a laborer. (R. at 41, 104–07.) As with his prior jobs, Gray was forced to stop working at the pet store because of problems with his knees. (R. at 42, 110.)

Gray filed an application for SSDI benefits on June 17, 1992. (R. at 112–19.) Gray's application was denied both initially, (R. at 66–69), and upon reconsideration. (R. at 80–

83.) Gray also filed an application for SSI benefits on May 14, 1992, (R. at 84–88), which also was denied initially, (R. at 90–93), and upon reconsideration. (R. at 95–98). Gray then requested a hearing, which was held on May 21, 1993. (R. at 33–50.) At the hearing the ALJ found that Gray was not disabled and, therefore, that he was not entitled to a period of disability or to SSDI benefits under Sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i), 423, and that he was not eligible for SSI benefits under Sections 1602 and 1614(a)(3)(A) of the Act, 42 U.S.C. §§ 1381a, 1382c(a)(3)(A). (R. at 25.) When the Appeals Council denied Gray's request for review on November 23, 1993, (R. at 11–12), the ALJ's decision became the final decision of the Commissioner.[3] Gray now appeals to this Court from this decision.

## II.

Gray contends that the Commissioner's decision that he is not disabled because he has the Residual Functional Capacity ("RFC")[4] to perform a full range of sedentary work activity is not supported by substantial evidence. He argues that: (1) his impairment, as described by a physician examining him for purposes of determining his entitlement to Workers' Compensation benefits, renders him unable to perform a full range of sedentary work according to the Commissioner's own definition of sedentary work; (2) the Commissioner did not properly consider the effect of pain on his RFC; (3) the Commissioner improperly considered his attempts to find work as an indication that he could perform a full range of sedentary work; and (4) the testimony of a vocational expert was necessary for the Commissioner to sustain her burden of proof.

## A.

The standards governing entitlement to disability benefits and supplemental security

---

3. Accordingly, references to the determinations and findings that are at issue in this appeal are interchangeably referred to as those of the ALJ and those of the Commissioner.

4. RFC is defined as follows:

A medical assessment of what an individual can do in a work setting in spite of the func-

tional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). RFC is the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.

Soc.Sec.Rep.Serv., SSR 83–10, at 31.

income benefits are well settled. A claimant seeking social security benefits is considered disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

■ The analytical framework for evaluating claims of disability is defined by regulations of the Commissioner, which set forth a five-step inquiry. *See* 20 C.F.R. §§ 404.1520, 416.920. As the Court of Appeals has explained:

> The first step in the sequential process is a decision whether the claimant is engaged in 'substantial gainful activity.' If so, benefits are denied. If not, the second step is a decision whether the claimant's medical condition or impairment is 'severe.' If not, benefits are denied. If the impairment is 'severe,' the third step is a decision whether the claimant's impairments meet or equal the 'Listing of Impairments' set forth in subpart P, app. 1, of the social security regulations. These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the 'Listing of Impairments,' the fourth step is assessment of the individual's 'residual functional capacity,' i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform 'alternative occupations available in the national economy.'

*Dixon v. Heckler*, 785 F.2d 1102, 1103 (2d Cir.1986) (citations omitted), *vacated on oth-*

*er grounds sub nom. Bowen v. Dixon*, 482 U.S. 922, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987); *see also Diaz v. Shalala*, 59 F.3d 307, 312 n. 2 (2d Cir.1995); *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir.1995).

■ The initial burden is on the claimant to prove that he is disabled within the meaning of the Act. 42 U.S.C. § 423(d)(5); *see also Reyes v. Secretary of Health and Human Servs.*, 807 F.Supp. 293, 298 (S.D.N.Y. 1992) (Motley, J.). This burden encompasses the first four steps described above. *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir.1983). Once the claimant carries the burden of proving disability by showing that his impairment prevents his return to his prior employment, he has established a prima facie case and the burden shifts to the Commissioner to prove the fifth step—that there exists alternative substantial gainful employment in the national economy that the claimant can perform considering not only his physical capacity but also his age, education, experience, and training. *Id.* 717 F.2d at 722–23; *see also Reyes*, 807 F.Supp. at 298; *Crean v. Sullivan*, No. 91 Civ. 7038, 1992 WL 183421, at *4 (S.D.N.Y. July 22, 1992) (Leisure, J.).

■ In determining whether a claimant is disabled, the Commissioner must consider: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) the claimant's subjective evidence of pain and physical incapacity as testified to by himself and others who observed him; and (4) the claimant's age, educational background, and work history. *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983). Moreover, the opinion of a treating physician is entitled to considerable weight and is, in the absence of contradictory evidence, binding on the Commissioner. *Id.*

■ In meeting her burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, common-

ly referred to as "the Grid".[5] The Grid takes into account the claimant's RFC in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability. *Crean,* 1992 WL 183421, at *4.

Exclusive reliance on the Grid, however, is inappropriate where the medical-vocational guidelines fail to accurately describe a claimant's particular limitations. *See* 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e); *Crean,* 1992 WL 183421, at *4. Where there are discrepancies between the claimant's profile and the Grid factors, all relevant facts are to be considered in light of the vocational considerations outlined in 20 C.F.R. §§ 404.1560–404.1569a; *see Bapp v. Bowen,* 802 F.2d 601, 605 (2d Cir.1986). For example, sole reliance on the Grid may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform. *See* 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00(e)(2), 201.00(h); *see also Bapp,* 802 F.2d at 605; *Crean,* 1992 WL 183421, at *4–*5.[6] This is also the case where there is not substantial evidence that a claimant can perform a full exertional range of work. *See Nelson v. Bowen,* 882 F.2d 45, 49 (2d Cir.1989) (individual assessment required where there is insufficient proof that a claimant can perform a full range sedentary work).

### B.

In the present case, the ALJ performed the five-step evaluation process in determin-

ing that Gray is not entitled to benefits. He concluded that since May 1992, Gray had not been engaged in substantial gainful activity because of his knee problems and that he had a severe impairment that did not meet or equal the level of severity of a listed impairment. (R. at 20–21.) He then determined, based both on Gray's testimony and the medical evidence, that Gray could not perform his past relevant work. (R. at 21.) Finally, based on the doctors' reports, the medical evidence, Gray's testimony about his symptoms and limitations, and the fact that Gray had applied for sedentary jobs and intended to go to college, the ALJ determined that Gray retained an RFC that enabled him to perform a full range of sedentary work. (R. at 22–24.) Consulting the Grid, the ALJ concluded that Gray was not disabled. (R. at 24.)

### C.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *Dousewicz v. Harris,* 646 F.2d 771, 773 (2d Cir.1981). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991).

Here, Gray sustained his burden of proving that his impairment prevents him

---

5. The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling.

6. An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying,

pushing, and pulling). 20 C.F.R. § 404.1569a(b). A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. § 404.1569a(c). Examples of nonexertional limitations are nervousness, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. § 404.1569a(c)(1)(i), (iv), (v).

from performing his past relevant work. Both the record and the ALJ's decision support this conclusion. Therefore, the burden shifted to the Commissioner to prove, with specific reference to the medical evidence, that Gray can perform alternative substantial gainful employment that exists in the national economy. *See, e.g., White v. Secretary of Health and Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).

### III.

■ Gray complains about three aspects of the ALJ's determination that he retains the RFC to perform a full range of sedentary work. First, Gray argues that the very evidence upon which the ALJ relied demonstrates that he cannot perform a full range of sedentary work under the Commissioner's definition of sedentary work. Second, he argues that the ALJ failed to consider properly the effect of pain on his RFC. Third, he argues that the ALJ improperly considered his testimony that he had applied for sedentary jobs and that he intends to go to college. In addition, Gray argues that because he cannot perform the full range of sedentary work, the ALJ was required to introduce the testimony of a vocational expert. The plaintiff's first three arguments are particularized aspects of his contention that the Commissioner's decision that he possesses an RFC that enables him to perform a full range of sedentary work is not supported by substantial evidence. A careful review of the evidence demonstrates that the plaintiff is correct, and therefore the Commissioner's decision should be reversed and remanded for the calculation of benefits.

■ In concluding that Gray retained the RFC to perform a full range of sedentary work activity, the ALJ relied heavily on the fact that Dr. Jones, who examined the claimant on two occasions in connection with de-

termining whether Gray was eligible for Workers' Compensation benefits, found that while Gray is unable to stand for prolonged periods, he can perform sedentary work. (R. at 22.)[7]

In the regulations, the Commissioner defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In Social Security Ruling 83–10, the Commissioner explained that "occasionally" means "occurring from very little up to ⅓ of the time" and that, therefore, in a sedentary job, standing or walking generally should not total more than two hours of an eight-hour work day, and sitting generally should total approximately six hours of an eight-hour work day. West Soc.Sec.Rep.Serv., SSR 83–10, at 29. Moreover, the Commissioner has explained that sedentary work requires a worker to be in a certain place or posture for at least a certain length of time to accomplish a certain task and that unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. *Carroll*, 705 F.2d at 643; *see also Nelson*, 882 F.2d at 48–49.

In a report dated July 22, 1992, Dr. Jones concluded that Gray had a "marked partial degree of causally related disability" and that the "only type of work [Gray] could do at this time would be sedentary which would not involve any standing of more than five or ten minutes." (R. at 178.) Dr. Jones further concluded: "[Gray] would not be able to climb any stairs to get work or climb any ladders at work. In addition, he would be unable to bend since his left knee prevents

---

7. A finding of disability for purposes of entitlement to Workers' Compensation is not dispositive on the issue of entitlement to Social Security benefits. *See, e.g., Sims v. Sullivan*, No. CV–91–1668, 1992 WL 138409, at *5 (E.D.N.Y. May 28, 1992) (report made in the context of the plaintiff's application for Workers' Compensation is

not dispositive on the issue of disability under the Act); *Bennett v. Secretary of the U.S. Dep't of Health and Human Servs.*, 769 F.Supp. 457, 461 (E.D.N.Y.1991) (indication of a "total" disability on a Workers' Compensation form was not sufficient, under the Act, to allow the Court to rule on the plaintiff's entitlement to benefits).

him from doing this properly." (*Id.*) After reexamining Gray in February 1993, Dr. Jones concluded that Gray "continues to have a marked, partial disability" and that Gray "can only do sedentary work." (R. at 201.) Dr. Jones found Gray's prognosis for recovery to be poor. (*Id.*)

The ALJ relied explicitly on Dr. Jones conclusion that Gray could perform sedentary work, but he did not consider how Gray's inability to stand for more than five or ten minutes, which was documented in Dr. Jones' report, would impact Gray's RFC. While the Commissioner argues that Dr. Jones's report "apparent[ly]" means that Gray could only stand for five or ten minutes at a time and not five or ten minutes per day, and that such an interpretation is consistent with Dr. Jones's opinion that Gray could perform sedentary work, (Def.'s Brief at 17), this argument is unavailing. While the Commissioner argues that each period of standing or walking in a sedentary job would be "quite brief in duration," so that the plaintiff, even with his restrictions, could perform sedentary work, (*id.*), there is no evidence that the plaintiff could stand for two hours a day, as might be required in a sedentary job. *See Nelson*, 882 F.2d at 48–49 (reversing the Secretary's determination that the claimant was not disabled because he could perform at least sedentary work where the Secretary had not shown that the claimant engaged in activity for sustained periods of time comparable to those required to maintain a sedentary job); *see also Ferraris v. Heckler*, 728 F.2d 582, 585–86 (2d Cir.1984); *Koseck v. Secretary of Health and Human Servs.*, 865 F.Supp. 1000, 1013 (W.D.N.Y.1994) ("To sustain her burden, the Secretary must proffer specific medical evidence that the plaintiff can meet the exertional demands necessary to maintain sedentary work.") (citing *Nelson*, 882 F.2d at 48); *Martin v. Shalala*, No. 91–CV–0730E, 1994 WL 263818, at *4 (W.D.N.Y. June 13, 1994) (same); *Irvine v. Sullivan*, No. CV–91–500, 1992 WL 245581, at *4 (E.D.N.Y. Aug. 11, 1992) ("The RFC assessment focuses on the type of work activity a claimant can perform 'on a regular and continuing basis,' and must measure physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching and han-

dling.... The Secretary bears the burden of demonstrating that a plaintiff is able to perform 'substantially all of these activities.'" (citing 20 C.F.R. §§ 416.945(b), 404.1567(c))); *Morris v. Bowen*, No. 88 Civ. 0591, 1989 WL 270108, at *6 (S.D.N.Y. Jan. 12, 1989) (Wood, J.) ("The ALJ must ... outline with specificity the crucial factors in a determination that claimant is capable of sedentary work. The Secretary bears the burden of showing that the claimant is capable of sedentary work.") (citations omitted); *Camasto v. Bowen*, No. 88 Civ. 1119, 1989 WL 25251, at *3 (S.D.N.Y. Mar. 17, 1989) (Sweet, J.) (remanding where there was an "absence of evidence" indicating that the claimant could sit long enough to perform sedentary work).

Moreover, perhaps because of a notable lack of relevant medical evidence on the plaintiff's ability to sit and stand for particular amounts of time, the ALJ resorted to distinguishing away the evidence provided by the plaintiff's treating physicians. These reports, rather than providing substantial evidence that the plaintiff can perform sedentary work, only provide, at best, a lack of definitive evidence that the plaintiff cannot perform sedentary work.

For example, the letter dated June 3, 1993 from Dr. Elting, one of Gray's treating physicians, to Gray's attorney states that Gray has a "profound disability." (R. at 236.) The ALJ treated this conclusion as "binding," but concluded that it did not show that Dr. Elting found Gray to be incapable of performing sedentary work. (R. at 23.) This is not evidence, however, that Gray can perform sedentary work.

Similarly, the Commissioner notes that while Dr. Elting opined several times between June 1992 and February 1993 that Gray was totally disabled for purposes of entitlement to Workers' Compensation, when he saw the plaintiff on March 10, 1993, he assessed only a partial disability. (Def.'s Brief at 15–16.) Noting that there is no concept of partial disability under the Act, *see, e.g., Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir.1985), the Commissioner argues that Elting's revised diagnosis is "not incon-

sistent with the [Commissioner]'s determination that plaintiff was not disabled." (Def.'s Brief at 16.) While this finding may not be inconsistent with the ALJ's determination, it also is not evidence of the plaintiff's ability to perform sedentary work.[8]

Similarly, the ALJ noted that the fact that two of the plaintiff's treating physicians, Dr. Boman and Dr. Elting, had found Gray unable to perform his past work did "not necessarily preclud[e] the performance of all forms of competitive employment." (R. at 22–23.) The ALJ explained: "In other words, these reports do not demonstrate that the claimant's treating physicians found him disabled from performing sedentary work activity." (R. at 23.) But this evidence does not affirmatively support the Commissioner's burden of showing that the plaintiff can perform sedentary work.

■ As explicitly stated in the regulations, RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision. See 20 C.F.R. § 404.1513(c), (d)(3). In Martin v. Shalala, No. 91–CV–0730E, 1994 WL 263818 (W.D.N.Y. June 13, 1994), where the court determined that the Secretary's decision that the plaintiff could perform a full range of unskilled sedentary work was not supported by substantial evidence, the court noted:

> [T]he ALJ stated 'nowhere in the medical evidence is there any indication that the claimant would be unable to meet the exertional demands of sedentary work.' One does not, of course, sustain a burden of proof by pointing to an absence of proof supporting an adversary's position. But more importantly, this statement highlights the ALJ's failure to introduce specific medical evidence that the plaintiff could hold a sedentary job.

Id. 1994 WL 263818, at *4 (citation omitted).

Lacking appropriate medical evidence upon which to base his determination with respect to the plaintiff's RFC, the ALJ relied on the plaintiff's intention to attend college and his application for sedentary jobs in concluding that the plaintiff could perform sedentary work. Indeed, the record contains evidence that Gray desires to obtain a sedentary job but that he believes he cannot get such a job because he lacks the appropriate training. (R. at 44, 126.)

In Nelson v. Bowen, 882 F.2d 45 (2d Cir. 1989), the Court of Appeals criticized the ALJ for placing "considerable emphasis" on the plaintiff's ability to go to college in determining that he was not disabled. Id., 882 F.2d at 48. The court explained: "When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." Id., 882 F.2d at 49. The Commissioner relies on cases where the claimant actually went to school, demonstrating an ability to perform a particular kind of work. See, e.g., Sorenson v. Weinberger, 514 F.2d 1112, 1118 (9th Cir.1975) (plaintiff was regularly attending school at the university level and working six or seven hours a day in classes, studying at other times, and driving to school); Hofacker v. Weinberger, 382 F.Supp. 572, 576 (S.D.N.Y.1974) (Carter, J.) (plaintiff's attendance at classes for six hours a day supported the Secretary's finding that the plaintiff was not disabled). Here, however, Gray's expressed intention to go to school certainly has not demonstrated that he actually is capable of performing sedentary work. And, while the ALJ noted, without citing to the record, that Dr. Elting supported Gray's educational plans, "further demonstrating that Dr. Elting does not find the claimant to be totally disabled[,]" the only evidence of this is an office note by Dr. Elting dated June 15, 1992 that states:

> Mark continues to have a great deal of difficulty. Both his patellae are unstable.

---

8. The issue of disability for purposes of workers' compensation is different from the issue of disability for purposes of Social Security disability benefits and SSI benefits. Workers' compensation determinators are directed to the worker's prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act. Moreover, there is no such thing as partial disability for purposes of the Social Security Act. See Stephens, 766 F.2d at 285; Goodman v. Bowen, No. 87 CV 1251, 1988 WL 138281, at *3 (E.D.N.Y. Dec. 9, 1988). See also cases cited supra note 7.

He cannot maintain his Pet Store. He is attempting a return to college. We will see him on an as needed basis.

(R. at 156.) This does not demonstrate, in any way, that the plaintiff can perform a full range of sedentary work.[9] There is also a note in the record from Dr. Boman, on a report dated November 24, 1992, that concluded that Gray was totally disabled for purposes of Workers' Compensation, that states: "[Gray] is interested in pursuing college and I support this 100%." (R. at 214.) Again, this cannot suffice to demonstrate that Gray can perform a full range of sedentary work. Similarly, the plaintiff's applying for sedentary work does not demonstrate an actual ability to perform such work. *Cf. Ross v. Schweiker,* 566 F.Supp. 292, 295 (E.D.Pa.1983) (plaintiff's willingness to work and belief that he could work corroborated the physicians' opinions that obtaining employment would promote the plaintiff's emotional and mental well-being).

The ALJ also considered the plaintiff's testimony about his symptoms. At the hearing, the plaintiff testified that he can sit for about fifteen minutes before he has to move his leg or get up and walk around because of pain in his back. (R. at 44.) During the hearing, which lasted less than twenty minutes, the plaintiff stood up and sat back down again to try to "snap" his knee. (Pl.'s Brief at 10; R. at 47.) He testified that he has constant pain, sometimes consisting of a "dull ache" and other times consisting of a "jabbing, stabbing pain...." (R. at 45.) He testified that he experiences the latter kind of pain when he stands "a little too long" and then he has to "sit right down." (R. at 45–46.) He further testified that he had stopped hunting, fishing, bowling, and hiking and that he has a hard time playing with his daughter, who was four years old at the time of the hearing, because of his knee problems. (R. at 46.) There also was evidence in the record that Gray tries to do the dishes but that "usually" he has to stop and sit "quite often" because of pain in his knees. (R. at 109.) The ALJ explicitly found that the plaintiff's

description of his symptoms was credible. (R. at 23.)

The plaintiff complains that the ALJ did not adequately consider the effect of pain on his RFC. While it is incumbent upon the ALJ to evaluate the effect of pain on the claimant's ability to function, *see* 20 C.F.R. §§ 404.1529, 416.929; *see also Martin,* 1994 WL 263818, at *5, here, the ALJ considered the pain to which the plaintiff testified; indeed, the ALJ's decision explicitly considered the plaintiff's description of his symptoms in accordance with the regulations and credited it. However, the ALJ found that the plaintiff's pain did not affect his ability to perform a full range of sedentary work.

There is, however, no substantial evidence that supports that conclusion. The Commissioner argues that the finding that the plaintiff could perform sedentary work is supported by "the statements of both Dr. Elting and Dr. Jones...." (Def.'s Brief at 18.) Yet, as discussed above, these statements do not demonstrate that the plaintiff can perform sedentary work. The Commissioner also argues that the fact that the plaintiff had continued to look for sedentary work, had applied for specific jobs, and had planned to attend college demonstrates that the plaintiff believed he could meet the exertional demands of such work. (*Id.* at 18–19.) Again, as discussed above, all of this evidence, including the reports by the plaintiff's doctors, are insufficient to support a finding that the plaintiff was capable of performing sedentary work.

While the ALJ found that the "evidence as a whole" establishes that Gray can perform sedentary work, (R. at 23), a careful review of the record demonstrates that this is not the case. Because the ALJ's decision itself demonstrates that the record does not contain substantial evidence to support the conclusion that Gray can perform sedentary work, and because the Court's independent review of the record confirms such a lack of evidence, the Commissioner's denial of bene-

---

9. In a letter dated February 23, 1993, Dr. Jones noted: "[Gray] continues to work with VESID and is looking for a sedentary job. He does not feel that he can attend college with his continuing knee problems, however." (R. at 200.)

fits should be reversed and the case remanded for the calculation of benefits.[10]

■ A reversal and remand solely for the calculation of benefits is the appropriate disposition in this case. In *Shalala v. Schaefer,* —— U.S. ——, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), the Supreme Court explained that the "exclusive methods" by which district courts may remand a case to the Commissioner are set forth in sentence four and sentence six of 42 U.S.C. § 405(g). Sentence four provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). And, sentence six provides, in relevant part:

> The court may, on motion of the [Commissioner] made for good cause shown before [she] files [her] answer, remand the case to the [Commissioner] for further action by the [Commissioner], and it may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . .

*Id.; see also Melkonyan v. Sullivan,* 501 U.S. 89, 97–99, 111 S.Ct. 2157, 2162–63, 115 L.Ed.2d 78 (1991) (discussing the two types of remand); *Sullivan v. Finkelstein,* 496 U.S. 617, 624–27, 110 S.Ct. 2658, 2663–65, 110 L.Ed.2d 563 (1990) (same); *Caceres v. Shala-la,* No. 93 Civ. 7444, 1995 WL 20312, at *2 (S.D.N.Y. Jan. 19, 1995) (McKenna, J.) ("The Court has jurisdiction to affirm, modify, or reverse any final decision of the Secretary. . . . The Court may remand for good cause shown or to consider additional evidence which is material and not improperly ignored originally.") (citations omitted); *Irvine,* 1992 WL 245581, at *5 (noting, under the recent Supreme Court cases, the two types of remand that are possible).

■ Here, there has been no showing of good cause by the Commissioner, nor has there been a proffer of new and material evidence. Indeed, the Commissioner has not sought a remand for the submission of new and material evidence or attempted to show good cause why that evidence was not proffered before the initial determination. Therefore, it is appropriate to grant the plaintiff's motion and deny the Commissioner's motion, reversing the Commissioner's decision that the plaintiff is not entitled to benefits and remanding the case for the calculation of benefits. In *Rivera v. Sullivan,* 771 F.Supp. 1339 (S.D.N.Y.1991), Magistrate Judge Dollinger's report, accepted by Judge Patterson, discussed the circumstances in which a remand is appropriate. The court explained:

> The Second Circuit has noted that 'where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration. In such a case, a remand solely for the purpose of calculating benefits is appropriate. Stated differently, the

---

**10.** Given the Court's decision to reverse the Commissioner's decision on the grounds discussed above, it is unnecessary to address the plaintiff's argument that because he has an unusual limitation on his ability to sit or stand, and because he suffers from nonexertional limitations with respect to the pain he experiences, the Commissioner was required to introduce the testimony of a vocational expert to sustain her burden of proving that jobs exist in the national economy that the plaintiff could perform. In arguing that there was no need for the testimony of a vocational expert, the Commissioner asserts: "Dr. Jones gave no indication that plaintiff could not sit for extended periods." (Def.'s Brief at 17.) It is useful to note that this argument misses the point and serves to underscore the lack of evidence supporting the Commissioner's burden to show that the plaintiff could perform sedentary work. *See, e.g., Martin,* 1994 WL 263818, at *4 (remanding the case where, among other things, there was no specific finding with respect to the ability to sit because "[t]he ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work[]") (citing *Ferraris v. Heckler,* 728 F.2d 582, 586–87 (2d Cir.1984)); *Camasto,* 1989 WL 25251, at *3 (remanding for further consideration of the plaintiff's ability to sit for prolonged periods).

Also, because the decision of the Commissioner has been reversed it is unnecessary to consider the plaintiff's request that the Court consider the medical report relating to the knee surgery that he underwent on December 23, 1993.

payment of benefits may be ordered 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.' If, on the other hand, the record would permit a conclusion by the Secretary that the plaintiff is not disabled, the appropriate remedy is to remand for further proceedings rather than for the calculation of benefits.

*Id.* at 1358–59 (citations omitted). In *Rivera,* the court remanded solely for the calculation of benefits. *Id.* at 1359–60; *see also Koseck,* 865 F.Supp. at 1013–15 (reversing the Secretary's decision and remanding for the calculation of benefits where there was not substantial evidence in the record to support the determination that the plaintiff could perform sedentary unskilled work); *Irvine,* 1992 WL 245581, at *4–*7 (granting the plaintiff's motion for judgment on the pleadings and remanding for the calculation of benefits where there was not substantial evidence of the plaintiff's ability to perform any substantial gainful activity); *Morris,* 1989 WL 270108, at *7 (reversing the Secretary's decision to deny benefits and remanding for the calculation of benefits where the Secretary failed to adduce evidence of the claimant's capability of gainful employment and where the Secretary's determination that the claimant could perform sedentary work was not supported by substantial evidence).

As discussed above, the record does not contain evidence that, upon proper consideration, could lead to the conclusion that the plaintiff can perform sedentary work. Therefore, a remand for the calculation of benefits is appropriate. Moreover, the Commissioner has not begun to meet the standards for a remand for additional evidence since she has shown no new material evidence nor shown good cause for having failed to present it at the hearing. *See Carroll,* 705 F.2d at 644.

### IV.

For the reasons explained above, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's motion for judgment on pleadings is denied, and the Commissioner's denial of benefits is reversed and the case is remanded to the Commissioner solely for the calculation of benefits.

SO ORDERED.