**Reginald R. NELSON,**
**# 062–30–4945, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Appellee.**

**No. 1074, Docket 88–6211.**

United States Court of Appeals,
Second Circuit.

Argued April 24, 1989.

Decided Aug. 9, 1989.

Michael J. Barnas, New York City, for appellant.

Sapna V. Raj, Sp. Asst. U.S. Atty., S.D. N.Y., for appellee.

Before OAKES, Chief Judge,
MESKILL and WISDOM,* Circuit
Judges.

OAKES, Chief Judge:

This appeal is from a judgment of the United States District Court for the Southern District of New York, Richard J. Daronco, Judge, granting a motion upholding over an adverse magistrate's report the decision of the Secretary of Health and Human Services denying Nelson's claim for disability insurance benefits under Title II of the Social Security Act. The Secretary's decision was based on findings made by an administrative law judge ("ALJ") after a hearing and upon review of the medical evidence. We agree with the magistrate, James C. Francis IV, that there is not

* Of the Fifth Circuit Court of Appeals, sitting by

substantial evidence that Nelson, who has lower back problems following the surgical removal of a herniated disc, is capable of performing a full range of sedentary work. Therefore he must be evaluated on an individualized basis, which was not done by the ALJ, rather than through a mechanical application of the medical-vocational grid which may be used when a claimant can at least perform sedentary work. Accordingly, a remand to the Secretary is called for.

At the time of Nelson's hearing before the ALJ on March 6, 1985, Nelson was forty-six years old and living in New York City with his wife and his eight- and nine-year-old niece and nephew, who are mentally retarded. Nelson completed the tenth grade in high school and received a GED in the military service in 1959. He is presently working on a college degree which involves traveling to Vermont every fifth weekend, leaving Thursday and spending about six hours in classes both on Friday and Saturday, then returning to New York on Monday. He also attends Vermont College's auxiliary or extension in New York City every other week on weekends for three hours on Friday and five hours on Sunday, and he has a regular curriculum involving libraries and museums in connection with his course of study in special education, an interest which developed because of his niece and nephew.

Before Nelson was disabled, he worked for the emergency bureau for Consolidated Edison, the utility in New York, where he had been employed for nineteen years. He operated a flush truck, which he said is the same as a fire engine, and one of his principal jobs was to put out manhole fires with the truck, which involved going down into the manhole to clean it out, removing debris and putting it into the truck with a bucket, a rope, and a shovel. This involved lifting and carrying anywhere from seventy to one hundred pounds or thereabouts and required bending, stooping, squatting, crawling, and the like. His job also involved the delivery of tool carts, the heavy —500 to 800 pounds—carts hauled by trucks from one location to another which,

designation.

because of their weight, require two people to move. In 1979, Nelson lifted or moved a tool cart with an inexperienced man who had his hands positioned incorrectly on the cart. When Nelson's coworker moved his hands, all the weight of the cart shifted to Nelson, and his lower back was injured. Nelson saw a company doctor who advised conservative therapy, and he received total bed rest for some six weeks, with different types of medication. Nelson returned to light duty for about three months and then resumed his regular duties for about a week, but he found he could not do his old job since he could not bend over and could not sit in the truck to drive. He thereafter remained on light duty until November 4, 1982, when he was terminated.

In the meantime, however, in June 1982, Nelson was admitted to St. Clare's Hospital due to severe lower back pain. There the doctors made a clinical diagnosis of herniated lumbar disk at the L–5/S–1 vertebrae. A lumbar myelogram was done on July 8 which showed a large ventral extradural filling defect at the L–5/S–1 level, extending down the entire length of the body of S–1 and affecting mostly the right side of the thecal sac. The right S–1 nerve root shadow, as appeared in the myelogram, was "amputated." The doctor performing the myelogram therefore diagnosed a large herniated disc involving mostly the right side. On July 12, 1982, a laminectomy was done to remove multiple fragments of bony and cartilaginous material. Nelson was discharged a week later in good condition and advised to continue treatment under his personal physician. One month later he returned to light duty at Consolidated Edison, but, as we have said, he was terminated after three months of so-called light duty—shuffling papers—because he was unable to perform any work due to extreme pain and the inability to bend or sit.

X-rays taken at the Veterans Administration Hospital ("VA") on December 8, 1983, showed no foraminal narrowing and the partial laminectomy at L–5. On February 17, 1984, an orthopedist at the VA, after noting a loss of ankle jerk since surgery and in the neurological report a positive Lasique sign, diagnosed lower back pain

for which he prescribed a lumbarsacral corset and a therapeutic exercise program. According to Nelson's testimony, the doctors told him that there was nothing more they could do for him, although he was in pain and could not take medication because, before his operation, he had become chemically addicted and had to be detoxified and go through rehabilitation. On May 15, 1984, he was seen by a Dr. M. Mancheno, who reported that Nelson still had persistent pain radiating to both lower extremities, with numbness in the right leg and right foot, and that Nelson stated that he could not bend down or push or pull heavy objects. The doctor's physical examination indicated that he walked normally and had no difficulty getting on an examining table as well as lying down. The doctor noted a positive Lasique or straight-leg test on the right at fifty degrees and on the left at sixty degrees, with a diminished ankle jerk on the right side of about forty percent. He considered that muscle power and tone were essentially within normal limits, with no signs of muscle waste, asymmetry, or atrophy. His examination of the spine noted a slight loss of lordosis and slight paraspinal muscle spasm bilaterally, with tenderness on motion and palpation, spine flex to eighty degrees in the sitting position, seventy degrees in the standing position, extension to twenty degrees, lateral bending twenty degrees for each side, rotation of thirty degrees for each side. His neurological examination noted paraesthesias in the lateral aspect of the right leg and also in the lateral half of the dorsum of the right foot, extending to the fourth and fifth toes. Finally, a reviewing physician who did not examine Nelson submitted a residual functional capacity assessment, based upon Dr. Mancheno's findings, to the effect that Nelson could lift or carry fifty pounds at maximum capacity, could frequently lift or carry up to twenty-five pounds, could stand or walk for about six hours, could sit for about six hours, and could occasionally perform other actions.

On April 12, 1984, Nelson applied for disability benefits under the Social Security Act, 42 U.S.C. §§ 401–433, but his applica-

48

tion was denied both originally and on reconsideration. Nelson then requested a hearing on his disability claim and had one before ALJ Robert Schwartz on March 6, 1985, at which time he was represented by counsel. At the hearing, in addition to testifying to some of the foregoing facts, Nelson said that he did some of the housework along with his disabled wife. His work consisted of ironing; he could not wash dishes or hair (presumably the children's) because that would require bending. He testified to having had eight months of physical therapy at the VA and two months of physiotherapy.

The ALJ placed considerable emphasis in his questioning, as well as in his opinion, on Nelson's ability to go to Vermont to go to college, with a four-hour bus ride, as well as to go to classes in New York. Nelson said, however, that the bus stops every hour, that he sits for about a half hour and then stands until he feels comfortable and can sit down again, and that during the ride he is "constantly stiff and constantly in pain." Nelson said that his classes in Vermont have breaks every hour or hour and a half. He also said that he can sit for twenty or thirty minutes though in pain, but that he then has to stand up to straighten his body or otherwise he stiffens up and pain shoots down his leg and it is difficult to move. On the other hand, Nelson says that if he stands too long, he begins to feel pressure coming down his arms, and that his leg will "kick out" on him if he stands more than fifteen, twenty, or thirty minutes. In addition, Nelson claims that three or four times a week his right leg completely gives out and he falls over, and that he has to be very careful walking, especially with high curbs and the like. If Nelson tries to walk for a quarter-mile, he says he has to stop because of numbness. Nelson also says that he avoids climbing stairs as it is too painful, and that riding on the subway sends pain to his spine with every bump though "[i]t's something I have to deal with."

On April 1, 1985, ALJ Schwartz concluded that Nelson was not disabled and denied his claim for benefits, finding that although his back condition prevented him from performing his past job for Con Edison, the medical evidence and Nelson's own testimony demonstrated that he retained the capacity to perform at least sedentary work. The ALJ found that Nelson had not established that he was "experiencing pain of such severity and frequency as to prevent him from engaging in substantial gainful activity on a sustained basis." The Appeals Council upheld the ALJ's decision on June 27, 1985.

Nelson filed a pro se complaint in the United States District Court for the Southern District of New York, seeking review of the decision. This was referred by David Edelstein, Judge, to Magistrate Francis, who concluded, as above stated, that the Secretary's finding that Nelson was not disabled was not supported by substantial evidence. The magistrate said, in agreement with the Secretary, that Nelson had shown sufficient evidence of disability to shift the burden to the Secretary to show that there is work that Nelson can do. See Dumas v. Schweiker, 712 F.2d 1545, 1550–51 (2d Cir.1983); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982). According to the magistrate, the Secretary did not meet this burden because he failed to show that Nelson could do even sedentary work. As Magistrate Francis said, because Nelson's claim of disabling pain is supported by objective clinical findings, such as narrowing of the L–5/S–1 space, loss of ankle jerk, and paraspinal muscle spasm, "it is entitled to great weight," citing Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983). The magistrate also pointed out that the Secretary cannot sustain his burden without a showing that the claimant engages in activity for sustained periods of time comparable to those required to maintain a sedentary job, citing Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 643 (2d Cir.1983), especially in light of the Secretary's own ruling explaining that sedentary work requires "that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit

or stand at will," citing West's Soc.Sec.Rep. Serv. SSR 83–12 at 62 (Supp.1986). This case was transferred from Judge Edelstein to Judge Daronco, who on June 19 affirmed the Secretary's decision without discussing the merits and holding only that "[u]pon consideration of the defendant's objections to the Report of the Magistrate, and upon consideration of the record in its entirety, the court finds that the decision of the Secretary was supported by substantial evidence."

When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working. Therefore, for the reasons stated in the magistrate's report and recommendation, we believe this case must be remanded to the Secretary. Nelson must be evaluated on an individualized basis since the medical-vocational grid used by the ALJ does not apply to claimants who cannot do sedentary work. *See* 20 C.F.R. Part 404(P), App. 2 (concerning claimants able to do sedentary, light, medium, or heavy work); *McAndrew v. Heckler*, 562 F.Supp. 1227, 1230–31 (S.D.N.Y. 1983) (individualized evaluation rather than grid must be used where evidence did not support lower court's determination that claimant could do sedentary work). In an individualized evaluation the Secretary's burden can be met only by calling a vocational expert to testify as to the plaintiff's ability to perform some particular job and, of course, Nelson will have the opportunity either through medical or vocational or other testimony to rebut the evidence of the Secretary or to prove further his inability to perform sedentary work.

Judgment reversed; cause remanded.