Ranlet v. HHS                          CV-95-155-M    03/19/96

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


David Ranlet,
      Plaintiff,

      v.                                          Civil No. 95-155-M

Secretary of Health and Human Services,
      Defendant.


                              O R D E R


      Pursuant to § 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), plaintiff, David Ranlet, moves the court to reverse the

final decision of the defendant, Secretary of Health and Human

Services, denying his application for supplemental security

income benefits.  The Secretary objects, and moves the court to

affirm that order.  For the reasons set forth below, the

Secretary's decision is vacated and the case remanded for further

proceedings.


                      **Procedural Background.**

      On June 24, 1993, plaintiff applied for supplemental

security income benefits, claiming that he had been unable to

work since June 22, 1993.  The Social Security Administration

denied plaintiff's application initially and again after

reconsideration and examination of plaintiff by a physician and a disability expert. Plaintiff, his attorney, and a vocational expert then appeared before an Administrative Law Judge ("ALJ"), who considered plaintiff's application <u>de</u> <u>novo</u> and, by order dated October 5, 1994, determined that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby rendering it the final decision of the Secretary, subject only to judicial review.

**Factual Background.**

Plaintiff is a forty-six year old man, with an eighth grade education. His prior work experience includes jobs as an assembler of electronic components, a security guard, a punch press operator, and a laborer in a shoe shop. He claims that he is unable to work primarily due to a painful back condition (secondarily, he also complains of cataracts and a gallstone). Plaintiff says that he suffers pain in his lower lumbar area whenever he stands or sits. He also claims that the pain is so severe and frequent that he has difficulty sleeping. Before the ALJ, he testified that even when standing at the sink, washing dishes, he experiences back pain. Not surprisingly, he also

2

noted that he experiences pain when moving his wife's motorized wheelchair up and down the stairs of their apartment.[1]

In August of 1992, plaintiff was referred for physical therapy for his back condition. In November, he was seen for diagnostic imaging, which revealed hyperlordosis (increased curvature of the lumbar and cervical spine), but showed that there was no fracture, swelling, subluxation, or spondylolysis (dissolution of a vertebra). It also revealed a small round calcification, which was possibly a gallstone. Transcript of Administrative Hearing ("Tr.") at 150. In December, plaintiff was examined at Neurology Associates of Southern New Hampshire, where he was given electromyography and nerve conduction studies, which revealed nothing out of the ordinary (i.e., no evidence of lumbosacral radiculopathy or peripheral neuropathy). (Tr. 153) A physical examination of plaintiff revealed that his reflexes were normal and symmetrical and that he had "no definite weakness or sensory loss." (Tr. 154)

---

[1] Plaintiff's wife is disabled. She suffers from myotonic dystrophy and is periodically confined to a wheelchair.

On December 8, 1992, plaintiff underwent an MRI examination, which revealed the following:

   (a)   small focal disc herniation, L3-4, without evidence of significant impingement of the thecal sac or nerve roots, but with progression compared to the patient's previous examination.

   (b)   Degeneration of the disc at L4-5 and L5S1 levels as well. (Tr. 159)

Approximately 10 weeks later, a second MRI confirmed that plaintiff suffers from degenerative and bulging discs at L3-4, L4-5, and 5-1. (Tr. 160)

In January of 1993, plaintiff was again referred to a physical therapist. Although he attended several sessions, his progress was limited because he overexerted himself when performing household duties, such as shoveling snow (to the point of pain) and repeatedly lifting his wife's wheelchair, despite having been advised not to lift anything weighing more than 40 pounds. (Tr. 140-43) Because he failed to perform the recommended exercises properly, plaintiff was considered a poor candidate for physical therapy and, on February 22, 1993, he was discharged from physical therapy. (Tr. 149)

In May, 1993, Dr. John Thomas, a physiatrist, examined plaintiff. Dr. Thomas observed that he had adequate range of motion in his lower extremities, but did complain of some end-of-range pain in his low back. While Dr. Thomas concluded that there were "no hard signs on my examination of radiculopathy," he observed that plaintiff's degenerative disks might be causing some dull, achy pain. (Tr. 163) On July 19, 1993, Dr. Wesley Wasdyke, of the Elliot Hospital Pain Clinic examined plaintiff. Dr. Wasdyke observed:

> PHYSICAL EXAMINATION: He has a normal walk. He exhibits good strength in his lower extremities by standing on his toes, heels, getting up from a squatting position. He has normal sensation to sharp scratching in his lower extremities bilaterally. He has normal position sense of the toes as well as normal plantar reflexes. Reflexes at the knee and at the achilles tendon are 2+ bilaterally. There is no tenderness in his lower thoracic, lumbosacral spine, or paraspinous areas. He has normal mobility at the waist. His lumbar paraspinous muscles do seem taught but non-tender.

> ASSESSMENT: This gentleman has a long history of low back pain with onset after taking a fall in 1991. There is no evidence of disc impingement although it is possible that the pain could be related to bulging discs. I have discussed the situation with him. I have offered him epidural steroid injection with the possibility that there might be a 50% chance of this helping him symptomatically. He realizes that it might take a series of three injections. This was discussed in detail and he does not wis[h] to pursue this course of therapy at the present time. He is willing to begin a trial of Amitriptyline to see if this will help with

5

> his symptoms and I have given his a prescription of
> Amitriptyline 25 mg. 30 tablets with one refill to be
> taken one tablet by mouth at bedtime.  (Tr. 169)

At a follow-up visit with Dr. Wasdyke on August 23, 1993, plaintiff complained of increased back pain, despite having faithfully taken his prescription medication.  Again, however, he declined epidural steroid therapy, so Dr. Wasdyke increased his prescription of Amitriptyline to 75 mg.  (Tr. 171)

Most recently, on April 5, 1994, plaintiff was examined by Dr. Maurice Brunelle, a chiropractor.[2]  Dr. Brunelle noted that plaintiff had been treated with massage, ultra sound, electrical muscle stimulation, and spinal adjustment, all of which provided only temporary relief.  Dr. Brunelle concluded that plaintiff could occasionally lift up to 25 pounds and, during an eight-hour day, could sit, stand, or walk for up to 30 minutes each.  He also concluded that plaintiff should avoid stooping and

---

[2]  Under the pertinent regulations, chiropractors are not considered an acceptable source of medical evidence regarding the claimant's impairment.  20 C.F.R. § 404.1513 (a).  Accordingly, the ALJ is entitled to give less weight to their opinions.  Diaz v. Secretary of Health & Human Servs., 59 F.3d 307, 314 (2d Cir. 1995); Cronkhite v. Secretary of Health & Human Servs., 935 F.2d 133, 134 (8th Cir. 1991).  See also 20 C.F.R. § 404.1513(e).

crouching, but was able to climb and kneel occasionally. (Tr. 174-86)

Finally, with regard to plaintiff's visual acuity, Dr. David Corbit, of Eye Physicians & Surgeons of Manchester, examined plaintiff on June 22, 1993. Dr. Corbit concluded that his vision could be corrected to 20/30 in each eye and that he was not experiencing any visual difficulty. (Tr. 166)

## Standard of Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Factual findings of the Secretary are conclusive if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).[3]

_____

[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939). This is

7

In making those findings, the Secretary must weigh and resolve conflicts in the evidence. Burgos Lopez v. Secretary of Health & Human Servs., 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." Ortiz, 955 F.2d at 769 (citing Rodriguez, 647 F.2d at 222). And, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)).

However, the ALJ must weigh that evidence in accordance with the applicable statutes and regulations. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is ground for reversal apart

something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

8

from a lack of substantial evidence."); <u>Santagate v. Gardner</u>, 293 F. Supp. 1284, 1287 (D. Mass. 1968) ("If the hearing examiner may have applied the law incorrectly, failing to make the necessary findings, district courts have remanded the case to the Secretary . . . .").

**Discussion.**

Plaintiff asserts among other things, that the ALJ did not adequately credit his claims of severe and disabling pain and disputes the ALJ's finding that his "allegations of inability to work because of pain are not entirely credible." (Tr. 16) He claims that the ALJ committed reversible error by basing his credibility determination, at least in part, upon plaintiff's having performed certain functions which were undertaken only in response to "extraordinary circumstances," most notably, the frequent lifting of his wife's motorized wheelchair.

The ALJ is required to consider the subjective complaints of pain or other symptoms by a claimant who presents a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." 42 U.S.C. § 423(d)(5)(A); <u>Avery v. Secretary of Health and Human Servs.</u>, 797 F.2d 19, 21 (1st Cir.

9

1986); 20 C.F.R. § 404.1529. "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989); see Bianchi v. Secretary of Health and Human Servs., 764 F.2d 44, 45 (1st Cir. 1985) ("The Secretary is not required to take the claimant's assertions of pain at face value.") (quoting Burgos Lopez v. Secretary of Health and Human Servs., 747 F.2d 37, 40 (1st Cir. 1984)). Once a medically determinable impairment is documented, the effects of pain must be considered at each step of the sequential evaluation process. 20 C.F.R. § 416.929(d). A claimant's medical history and the objective medical evidence are considered reliable indicators from which the ALJ may draw reasonable conclusions regarding the intensity and persistence of the claimant's pain. Avery, 797 F.2d at 23; 20 C.F.R. § 416.929(c)(3). However, situations exist in which the reported symptoms of pain suggest greater functional restrictions than can be demonstrated by the medical evidence alone. Id. The ALJ recognized that this is such a case. (Tr. 13, 15)

When a claimant complains that pain or other subjective symptoms are a significant factor limiting his or her ability to

10

work, and those complaints are not fully supported by medical evidence contained in the record, the ALJ must consider additional evidence, such as the claimant's prior work record; daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, past or present; treatment, other than medication, received for relief of pain or other symptoms, past or present; any measures used, past or present, to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain.  20 C.F.R. § 416.929(c)(3); Avery, 797 F.2d at 23.  If the complaints of pain are found to be credible under the criteria, the pain will be determined to diminish the claimant's capacity to work.  42 U.S.C. § 423(d); 20 C.F.R. § 416.929(c)(4).

Here, the ALJ considered such evidence and made specific findings in support of his conclusion that the plaintiff's "allegations of inability to work because of pain are not entirely credible."  (Tr. 16)  For example, the ALJ properly considered plaintiff's refusal to pursue epidural steroid injections, his inconsistent statements regarding the side-

11

effects of his medication, his ability to accomplish daily activities independently and to walk without assistive devices, his apparent failure to participate in a recommended pain management program, and his ability to perform household chores, visit friends, watch television, read, play with his son, and, generally, lead a fairly active life.  See, e.g., Avery, 797 F.2d at 23 (When evaluating subjective claims of pain it is proper and, indeed, required that the ALJ consider the claimant's daily activities.); St. Pierre v. Secretary of Health & Human Servs., No. 94-232-JD, slip op. at 9-10 (D.N.H. May 25, 1995) (consideration of daily activities allows the Secretary to juxtapose the claimant's subjective allegations of pain with the relative intensity of his or her daily regimen).

However, implicit in the inquiry into a claimant's daily regimen is the notion that the daily activities used in the credibility calculus are ones which reasonably reflect the claimant's condition.  Accordingly, activities necessarily undertaken in response to extraordinary circumstances -- particularly when performed inadequately or with extreme pain -- cannot be considered reliable indicators of an individual's

12

ability to function with pain under the <u>Avery</u> analysis.[4]  <u>St.</u>
<u>Pierre</u>, slip op. at 9-10.  The Second Circuit addressed this
issue in <u>Nelson v. Bowen</u>, 882 F.2d 45 (1989), holding that a
claimant's ability to withstand extreme discomfort while sitting
on a four-hour bus trip to attend college is an impermissible
basis upon which to negate his subjective allegations of pain.
The Second Circuit reasoned that:

> [w]hen a disabled person gamely chooses to endure pain
> in order to pursue important goals, it would be a shame
> to hold this endurance against him in determining
> benefits <u>unless his conduct truly showed that he is</u>
> <u>capable of working</u>.

<u>Id.</u> at 49 (emphasis supplied).  The case was remanded.  <u>Id.</u>
Similarly, in <u>St. Pierre</u>, <u>supra</u>, this court (DiClerico, J.) ruled
that, in assessing the credibility of a claimant's allegations of
pain, it was inappropriate for an ALJ to consider the claimant's
ability to drive for 40 minutes to visit his terminally ill wife
in the hospital.  <u>St. Pierre</u>, slip op. at 10-11.

---

[4]  Here, for example, plaintiff argues that he <u>has</u> to lift
his wife's wheelchair and he testified that he had difficulty
getting the wheelchair in and out of the house (Tr. 34), requires
the assistance of his young son, and occasionally has to
disassemble the unit in order to move it.  (Tr. 35).

In this case, the ALJ erroneously relied upon the plaintiff's ability to repeatedly lift his wife's motorized wheelchair as a basis for the discounting of his subjective allegations of pain.  As noted in St. Pierre, supra, "the reliance on this evidence is incompatible with the purpose of Avery . . . because the evidence does not assist the Secretary in understanding the relationship between the medically determinable impairment, the alleged pain, and the plaintiff's ability to work."  Id. at 10.  Plaintiff's repeated lifting of his wife's wheelchair is activity that can be fairly characterized as responsive to a unique circumstance of personal hardship.  It does not necessarily follow, then, that because plaintiff is able to muster the strength (and perhaps gamely endure the accompanying pain) necessary to move his wife's wheelchair, that his doing so evidences an absence of pain consistent with an ability to engage in light-duty employment.  That is to say, entirely volitional daily activities certainly provide reliable bases for gauging pain-related disability, especially when those activities are inconsistent with the claimed degree of pain.  But activities gamely undertaken in response to unique or extreme circumstances out of necessity are not necessarily reliable bases upon which to gauge pain-related disability.  Plaintiff's moving

14

his wife's wheelchair is a matter of necessity and qualifies as an activity undertaken in response to a unique circumstance of personal hardship.  For that reason, it provides little insight into the credibility of Ranlet's complaints of pain and should not have been considered in weighing that credibility.  See Bowen, 882 F.2d at 49.

Because the ALJ's decision does not describe the relative weight accorded to each of the factual findings upon which he based his overall assessment of plaintiff's credibility relevant to the degree of pain he experiences, this court cannot fairly determine whether the ALJ still would have concluded that the plaintiff's allegations were not entirely credible absent reliance on the evidence regarding plaintiff's repeatedly lifting his wife's wheelchair.  Accordingly, this matter must be remanded for reconsideration and a determination of plaintiff's disability (if any) without reference to his ability to lift and move his wife's wheelchair.  While the ALJ may very well reaffirm his earlier conclusion that plaintiff is not disabled, that is a decision which he must make, at least in the first instance. Because the case is remanded for reconsideration, the court need

15

not address the remaining issues raised by plaintiff, which appear to be largely without merit.

## Conclusion.

For the foregoing reasons, defendant's motion for an order affirming the decision of the Secretary (document no. 7) is denied and plaintiff's motion for an order reversing the decision of the Secretary (document no. 5) is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for reconsideration, clarification of his original order, and, if he deems necessary, further hearing(s).


SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

March 19, 1996

cc:  Vincent A. Wenners, Jr., Esq.
     David L. Broderick, Esq.