21-2027
*Claudio-Montanez v. Kijakazi*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-two.

PRESENT:
> GUIDO CALABRESI,
> BETH ROBINSON,
> > *Circuit Judges*
> PAUL A. ENGELMAYER[*],
> > *District Judge*

_____

ANA CLAUDIO-MONTANEZ,

> *Plaintiff-Appellant,*

> v.                                                                No. 21-2027

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,

> *Defendant-Appellee.*

_____

[*] Judge Paul A. Engelmayer of the United States District Court for the Southern District of New York, sitting by designation.

_____

FOR APPELLANT:                          PETER A. GORTON, Lachman &
                                        Gorton, Endicott, NY.

FOR APPELLEE:                           MOLLY E. CARTER (Michael J. Pelgro,
                                        Regional Chief Counsel, *on the brief*),
                                        Office of the General Counsel, Social
                                        Security Administration, Boston,
                                        MA, *for* Carla B. Freedman, United
                                        States Attorney for the Northern
                                        District of New York, Albany, NY.

Appeal from an order of the United States District Court for the Northern District of New York (Peebles, *M.J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on **July 23, 2021** is **VACATED and REMANDED**.

Plaintiff-appellant Ana Claudio-Montanez appeals a decision of the district court affirming the Social Security Commissioner's (Commissioner) denial of her applications for disability insurance benefits and supplemental security income.

Claudio-Montanez sought disability benefits based on myriad physical and mental limitations. In a lengthy decision including a thorough review of the medical record, the Administrative Law Judge (ALJ) concluded that Claudio-Montanez had the Residual Functional Capacity (RFC) to perform sedentary work, and that she could perform past relevant work as a hair braider. Claudio-

2

Montanez challenges the ALJ's RFC determination on appeal. In particular, Claudio-Montanez emphasizes the impact of impairments to her feet on her ability to meet the sitting and/or standing demands of sedentary work and the combined impact of her impairments on her ability to maintain acceptable levels of attention and/or attendance. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to vacate and remand.

When reviewing challenges to the Commissioner's denial of an application for disability insurance benefits or supplemental security income, we focus on the administrative ruling rather than the district court's decision. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). In so doing, we "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).[1] Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Rosa*, 168 F.3d at 77.

---

[1] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

For the reasons set forth below, we conclude that the ALJ's erroneous determination that Claudio-Montanez's longtime podiatrist, Dr. Joseph Hogan, was an unacceptable medical source was not harmless, and that this error, in combination with others, compromised the ALJ's conclusions as to the extent of Claudio-Montanez's ability to stand and her need for positional changes. In addition, we remand for reconsideration of the ALJ's conclusions concerning Claudio-Montanez's attentional and attendance capabilities.

## I. Dr. Hogan's Opinions

The Commissioner does not dispute that the ALJ erred in concluding that Dr. Hogan was not an acceptable medical source. At issue is whether this error was harmless. We conclude it was not.

An ALJ must follow a two-step analysis to determine the appropriate weight to give a treating physician's opinion. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

First, "the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* An ALJ must afford a treating physician's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *See*

4

20 C.F.R. § 416.927(c)(2);[2] *see also Rosa*, 168 F.3d at 78-79. "The ALJ is not permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

Second, if the ALJ determines that the opinion is not entitled to controlling weight, the ALJ must determine how much weight, if any, to give it. *See* 20 C.F.R. § 416.927(c)(2)-(6); *see also Rosa*, 168 F.3d at 78-79. In so doing, the ALJ must explicitly consider the "*Burgess* factors." *Estrella*, 925 F.3d at 95-96. These are: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.*; *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

A. Step One: Controlling Weight to Acceptable Medical Source.

At step one, the ALJ wrongly found that Dr. Hogan's opinions did not warrant "controlling weight" because he was not an acceptable medical source.

---

[2] The Commissioner amended the regulations regarding the treating physician rule for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c. That revision softened the treating physician rule such that a medical source's "treatment relationship" with a claimant is a factor considered when assessing the persuasiveness of medical source opinions, rather than a basis for affording controlling weight to the treating physician's opinion. We apply the pre-2017 version of the regulations, *id.* § 416.927, in effect when Claudio-Montanez filed her claim.

*See* App'x 63;[3] *see also* 20 C.F.R. § 416.902(a)(4) (defining licensed podiatrist as acceptable medical source for impairments of the foot, or foot and ankle, depending on the state of podiatrist's practice).[4]

> B. <u>Step Two: Application of the *Burgess* Factors to Determine Weight of Evidence.</u>

Having concluded that Dr. Hogan was not an acceptable medical source, the ALJ did not explicitly apply the *Burgess* factors. Instead, the ALJ concluded that Dr. Hogan's opinions warranted little weight because they were not well-supported given the "scant chronically positive objective clinical findings." App'x 58-59.

We recognize that an ALJ's failure to explicitly apply the *Burgess* factors may be harmless if a "searching review of the record" reveals that the ALJ applied the substance of the treating physician rule. *Estrella*, 925 F.3d at 96. But if the ALJ has

---

[3] Citations to "App'x" are to Appellant's appendix. Citations to "CAR" are to the certified administrative record.

[4] Whether a podiatrist is a "medical source" with respect to impairments of the foot only or the foot and ankle depends on whether the state in which the podiatrist practices permits practice of podiatry on the foot or the foot and ankle. *See* 20 C.F.R. § 416.902(a)(4). In New York, where Dr. Hogan is licensed, podiatrists may only treat "the ankle and soft tissue of the leg below the tibial tuberosity if the podiatrist has obtained an issuance of a privilege to perform podiatric standard ankle surgery or advanced ankle surgery." N.Y. EDUC. LAW § 7001(1). The record does not show whether Dr. Hogan has such a privilege.

not set forth "good reasons" for assigning little weight to the treating physician's opinion, we cannot conclude that the error was harmless, and we must remand for the ALJ to "comprehensively set forth its reasons." *Id.* For the following reasons, our "searching review of the record" does not reassure us that the ALJ had "good reasons" for assigning little weight to Dr. Hogan's opinion.

    i.  The Error Tainted the ALJ's Review of Dr. Hogan's Opinion.

First and foremost, the ALJ's erroneous conclusion that Dr. Hogan was not an acceptable medical source tainted her consideration of his opinions from the outset. In discounting Dr. Hogan's opinions as not coming from an acceptable medical source, the ALJ did not afford the deference generally owed to a claimant's treating physician. *See Burgess*, 537 F.3d at 128 (recognizing that, under the applicable regulations, a treating physician's opinion regarding the claimant's impairment is given "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques"—including consideration of a patient's reported complaints and history— "and is not inconsistent with the other substantial evidence in the case record"). Moreover, we have recognized that "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Id.*

Having concluded that Dr. Hogan was not an acceptable medical source, the ALJ did not approach his opinions with the deference due. We therefore cannot conclude that the ALJ would have afforded Dr. Hogan's opinions little weight absent her mistake.

ii.    The ALJ's Recitation of Facts Does Not Equate to "Good Reasons."

The ALJ's recitation of Dr. Hogan's treatment history and notes as part of the overall recitation of facts does not reveal whether and how the ALJ considered this history when deciding how much weight to assign to Dr. Hogan's opinions. *See Colon v. Saul*, No. 20 Civ. 2113 (KAM), 2021 WL 2827359, at *9 (E.D.N.Y. July 7, 2021) (explaining that "mere recitation of the medical evidence is insufficient" to provide a rationale). Moreover, we cannot conclude that the ALJ's mere identification of Dr. Hogan as a podiatrist reflects that she recognized his special expertise when assessing the weight to give his opinions. Because the ALJ's decision is devoid of consideration, explicit or implicit, of the *Burgess* factors, our "searching review of the record" does not assure us that she applied the substance of the treating physician rule, such that her error regarding Dr. Hogan was harmless. *Estrella*, 925 F.3d at 96; *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where there is reasonable basis for doubt whether the ALJ applied

8

correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her determination made according to correct legal principles.").

### iii. Other Grounds for Rejecting Dr. Hogan's Opinions Are Unsupported in the Record.

Dr. Hogan opined that Claudio-Montanez would need to elevate her feet for up to twenty-five percent of the workday, and that she needed to change positions every ten to fifteen minutes.[5] Some of the ALJ's bases for rejecting these restrictions are unsupported by the record, and therefore remand is warranted for the ALJ to reassess the weight to afford Dr. Hogan's opinion in light of the evidence in the record.

With respect to Claudio-Montanez's need to elevate her feet, the ALJ concluded that Dr. Hogan's opinion is inconsistent with the absence of "chronic findings of redness, heat, swelling, or effusion of the extremities," CAR 1932, that would, in the ALJ's view, support the need for Claudio-Montanez to elevate her

---

[5] Dr. Hogan was not alone in this opinion: Dr. Anne Calkins, Claudio-Montanez's pain management specialist, opined that she would need to change positions every fifteen minutes, CAR 2433, and Dr. Eric Seybold, Claudio-Montanez's orthopedic surgeon opined that she would need to change positions every thirty minutes. CAR 825. Significantly, the vocational expert testified that the need to change positions every ten to fifteen minutes would preclude Claudio-Montanez from doing any job available in the national economy. CAR 158-59.

9

feet.  We recognize an ALJ's role in resolving conflicts in the record, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), but in this instance the ALJ improperly set her own judgment against that of a treating physician, as she does not cite to medical opinions or other evidence establishing that the absence of these symptoms undermines Dr. Hogan's opinions.  *See Burgess*, 537 F.3d at 128 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *see also Rosa*, 168 F.3d at 79 (explaining that when an ALJ rejected a doctor's finding of loss of motion because there were no reports of muscle spasm to corroborate the loss of motion, the ALJ erred for having improperly "set [her] own expertise against that of" the treating physician).  In addition, we have suggested that where an ALJ determines, without medical evidence, that the absence of specific symptoms forecloses or undermines a diagnosis, we have not hesitated to remand.  *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).

Moreover, the ALJ's reliance on some of Claudio-Montanez's activities, such as cooking, cleaning, doing laundry, shopping, enrolling in school, or caring for her mother is misplaced.  *See* CAR 345, 707, 1918, 2997, 3027.  Substantial evidence does not support the ALJ's finding that Claudio-Montanez's daily activities are

10

inconsistent with the above restrictions Dr. Hogan recommended.[6] *See Riccobono v. Saul*, 796 F. App'x. 49, 50 (2d Cir. 2020) (summary order) ("[W]hile the ALJ may have given appropriate reasons for not according controlling weight to some of the opinions of [the claimant's] treating physicians, she must still base her conclusion on *some* medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so." (emphasis in original)); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A] claimant need not be an invalid to be found disabled under the Social Security Act."); *Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011) (summary order) (upholding ALJ decision not to credit a treating physician's opinion that the claimant needed to elevate his legs where *a medical expert* explained that the claimant's ability to walk normally and perform daily living activities without significant pain meant that claimant could sit for several hours without the need for leg elevation). Further, a claimant's "ability to engage in certain activities of daily living—such as caring for…children, preparing meals and washing dishes, and driving to her medical appointments" is insufficient to

---

[6] Claudio-Montanez's activity of walking for twenty minutes at a time is, however, inconsistent with Dr. Hogan's stated limitation of not being able to walk for more than five minutes at a time. CAR 1049, 1458.

render "a treating physician's findings flawed." *Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022).

In fact, Claudio-Montanez's testimony regarding her daily activities is essentially consistent with Dr. Hogan's recommendations. CAR 60-61, 79, 147-48, 1969-70. Notably, the ALJ acknowledges Claudio-Montanez's testimony that while helping her mother, she would work for ten minutes at a time, then proceed to take a break and elevate her feet on the coffee table, behavior consistent with Dr. Hogan's opinions. App'x 54. But the ALJ discredits Claudio-Montanez's testimony without adequate explanation. *Id.*

Similarly, as it relates to Claudio-Montanez's school-related activities, there is scant evidence of the length of Claudio-Montanez's classes, the duration she regularly remained seated, and whether she elevated her feet.[7] CAR 2997, 3027. So, the ALJ's inference that her enrollment in school is inconsistent with Dr. Hogan's restrictions relies on speculation. *See* App'x 53, 58; *see also United States v.*

---

[7] At most, there is evidence that on two occasions, Claudio-Montanez sat for a prolonged duration to complete schoolwork, but this does not constitute substantial evidence to support the ALJ's finding that the record does not support a sit/stand limitation, especially where such evidence is derived from medical reports documenting Claudio-Montanez complaining of pain resulting from such prolonged sitting. *See* CAR 2997, 3027; *see also Nelson v. Bowen,* 882 F.2d 45, 49 (2d Cir. 1989) (reasoning that choosing to endure pain in order to pursue important goals should not be held against a claimant when determining benefits unless conduct truly showed ability to work).

*Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (explaining that impermissible speculation occurs when there is the absence of probative facts to support the conclusion).

Likewise, Claudio-Montanez's activities in caring for her mother— including cleaning, sweeping, washing dishes, doing laundry, driving her to medical appointments, and dispensing medications—are not incompatible with the restrictions Dr. Hogan and others identified, as those restrictions relate to the need for positional changes, and to elevate her feet, rather than exertional limitations. In addition, Claudio-Montanez cared for her mother for an average of eighteen hours per week, which is far less than a forty-hour full-time work schedule. App'x 40, 54; CAR 2273-74. And we note that while the ALJ emphasized that Claudio-Montanez worked as many as thirty-nine hours in one week, the evidence she cites in fact reflects Claudio-Montanez worked thirty-nine hours in one two-week pay period. App'x 54; CAR 2273-74.

In sum, the ALJ's rejection of Dr. Hogan's opinions underlays critical conclusions in her ultimate RFC determination. For these reasons, despite the ALJ's lengthy analysis in this complex case, we are unconvinced that the ALJ's

13

erroneous determination that Dr. Hogan was not an acceptable medical provider was harmless.[8]

## II. Off-Task and Absenteeism.

The ALJ found that the record does not support limits in excessive absenteeism or other significant off-task behavior in a full-time work setting as a result of Claudio-Montanez's physical and mental impairments. Although we affirm the ALJ's determination as it relates to Claudio-Montanez's mental impairments,[9] remand is warranted for the ALJ to reassess the weight afforded to Claudio-Montanez's treating physicians' opinions regarding absenteeism and off-task behavior stemming from her physical impairments.

Even though every treating physician opined that Claudio-Montanez's physical impairments would prevent her from meeting employer demands for

---

[8] For similar reasons, we cannot conclude that evidence of Claudio-Montanez preparing a Thanksgiving meal in 2013, dancing with her granddaughter in December 2016, and traveling to New Jersey undermine her treating physicians' opinions that she needs to frequently change positions from sitting to standing.

[9] We agree with the Commissioner that Claudio-Montanez recites facts without addressing any of the ALJ's reasoning as to this issue, and that she has thus forfeited this issue on appeal. *See Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001). Even assuming Claudio-Montanez preserved this issue on appeal, we would conclude that substantial evidence supports the ALJ's determination that the restriction on Claudio-Montanez's skill level accommodated her particular mental limitations. CAR 1936-37, 1939. The ALJ in this instance relied on medical opinions indicating that her difficulties in dealing with stress were primarily triggered when performing more detailed or complex tasks, making frequent decisions, and performing inconsistent job duties.

staying on task and maintaining full-time attendance, App'x 67; CAR 759, 824-25, 2432-33, the ALJ affords these opinions "little weight" by relying on evidence she believed contradicted them. App'x 67. The ALJ did not choose between medical opinions, but instead improperly weighed her own judgment against that of Claudio-Montanez's treating physicians' expertise. *Greek*, 802 F.3d at 375. The Commissioner's argument that the ALJ relied on Dr. Annamalai Periakaruppan's opinion to support her determination is unpersuasive, as our review of the ALJ's decision does not indicate such reliance when making her determination. App'x 62.[10]

Even assuming the ALJ relied on Dr. Periakaruppan's opinion when assessing Claudio-Montanez's ability to sustain full-time work, we agree with Claudio-Montanez that Dr. Periakaruppan's opinion does not constitute a contrary opinion to that of her treating physicians on this issue.[11] We are

---

[10] We note the ALJ relied on Dr. Rehman's opinion, but as Dr. Rehman only assessed Claudio-Montanez's mental impairments, the ALJ's reliance on such opinions is irrelevant to our review of whether she provided "good reasons" for affording "little weight" to her treating physicians' opinions regarding her off-task behavior and absenteeism secondary to her *physical* impairments. App'x 66; CAR 2944.

[11] To the extent the Commissioner argues that Claudio-Montanez is precluded from arguing to this Court that Dr. Periakaruppan's opinion does not contradict her treating physicians' opinions because she did not raise it in the district court, we disagree. As Claudio-Montanez notes, the Commissioner raised this issue before the district court and "opened the door" to Claudio-Montanez addressing it in her reply brief before the district court.

unconvinced that Dr. Periakaruppan's opinions on the preprinted Programs Operations Manual System (POMS) form implicitly address her general ability to sustain focus and maintain attendance at full time work. Instead, the POMS form reflects Dr. Periakaruppan's opinions regarding whether Claudio-Montanez would be able to perform tasks such as, lifting, carrying, standing, sitting, pushing, pulling, and bending in a way that would allow her to sustain full-time work. CAR at 2034-2036. We cannot uphold the inference that in rendering these opinions, Dr. Periakaruppan implicitly opined as to Claudio-Montanez's general ability to remain on-task and sustain full-time work without excessive absenteeism.

Moreover, the other evidence the ALJ cites to support her decision to give "little weight" to Claudio-Montanez's treating physicians is not substantial. App'x 61-62, 67-68. For example, the ALJ's reliance on Claudio-Montanez's ability to care for her mother does little to advance her reasoning that the record does not support Claudio-Montanez's treating physicians' opinion that she will be significantly off-task and frequently absent as a result of her pain. Claudio-Montanez cared for her mother for an average of eighteen hours per week, which is far less than the forty-hour full-time work schedule she would have to maintain.

16

App'x 40, 54. The ALJ reasons that because Claudio-Montanez would be performing sedentary work that is less physically demanding than the activities she performed in the past, she will not experience the pain that would result from her physical impairments, and she therefore would not be off-task and absent as her treating physicians concluded. App'x 67. Again, the ALJ does not have the qualified expertise to make such a determination. *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012).

The ALJ's reliance on Claudio-Montanez's school attendance also does little to contradict the treating physicians' opinions, as the record lacks evidence that would give such an activity the significance the ALJ gives it. The ALJ finds that Claudio-Montanez's attendance at school required her "sustained attention, concentration, and good attendance." App'x 67. However, the record does not provide any support for "good attendance." CAR 2997, 3001. And even if Claudio-Montanez had perfect attendance, because the record does not include evidence of Claudio-Montanez's class schedule or course-load, the demands of such activity cannot be compared to the demands of a full-time work schedule. *Pauling*, 924 F.3d at 656.

17

Moreover, there is no evidence in the record to establish Claudio-Montanez's success in concentrating during her classes or while completing her assignments such that her enrollment in classes would undermine her treating physicians' opinions. CAR 2997, 3001, 3027. For that reason, Claudio-Montanez's school attendance does not undermine her treating physicians' opinions that if Claudio-Montanez were required to maintain a full-time schedule, she would be significantly off-task and frequently absent.

Similarly, Claudio-Montanez's ability to attend stand-alone medical appointments and hearings that do not demand Claudio-Montanez's presence or prolonged sitting for forty hours a week does little, if anything, to contradict Claudio-Montanez's treating physicians' opinions that she will be frequently absent from work. Especially where, as here, the ALJ also found that Claudio-Montanez cancelled some of her appointments. App'x 58.

To the extent the Commissioner argues that Claudio-Montanez's ability to prepare meals and tend to her personal care constitute "good reason" for giving little weight to her physicians' opinions that she would be significantly off-task and frequently absent if she were required to maintain a full-time work schedule, we disagree. Preparing meals and tending to one's personal care are markedly

18

different than working full-time, and Claudio-Montanez has explained the limited nature of these tasks. *See* CAR 60-61, 79, 148, 151, 1969-70; *see also Balsamo*, 142 F.3d at 81. Indeed, we have repeatedly recognized that engaging in basic activities necessary to one's welfare is markedly different from working full-time, *see, e.g.*, *Rucker v. Kijakazi*, 48 F.4th 86, 92 (2d Cir. 2022); *Colgan*, 22 F.4th at 363 (explaining that a claimant's ability to care for children, prepare meals, wash dishes, and drive to medical appointments is insufficient to find error in a treating physician's findings).

Based on the foregoing, we disagree with the Commissioner that the ALJ provided "good reasons" for giving Claudio-Montanez's treating physicians little weight as it relates to their opinions on off-task behaviors and absenteeism secondary to her physical impairments. Our "searching review of the record" does not assure us that the ALJ applied the substance of the treating physician's rule such that we would be able to review her decision based on her current RFC determination. *Burgess*, 537 F.3d at 129 (explaining that a "circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion").

## III.    Conclusion

We have considered the parties' remaining arguments and need not address them in light of the foregoing. Accordingly, the judgment of the district court is **VACATED** and the case is **REMANDED** with instructions to remand the matter to the Commissioner for reconsideration consistent with this order. Specifically, the ALJ is to reconsider the issue of whether Claudio-Montanez has the RFC to perform her past relevant work as a hair braider and, if not, whether she could make an adjustment to other work. In addressing this issue, the ALJ is to reconsider how much weight to give the opinions of Claudio-Montanez's treating physicians, Dr. Hogan, Dr. Shoaib Ahmed, Dr. Calkins, Dr. Seybold, and Dr. Wood concerning (1) Claudio-Montanez's need to elevate her feet; (2) Claudio-Montanez's need to alternate between sitting and standing; and (3) Claudio-Montanez's potential absenteeism and off-task behavior.

\* \* \*

**VACATED and REMANDED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

20