**Glenn KARA, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 97 Civ. 6681(BDP).**

United States District Court, S.D. New York.

June 24, 1998.

Horowitz & Cohen, Mt. Vernon, NY, for Plaintiff.

Linda Riffkin, Asst. U.S. Atty., United States Attorneys' Office, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision of the Commissioner of Social Security (the "Commissioner") to deny plaintiff's application for disability insurance benefits on the basis that plaintiff was not disabled from May 4, 1994 through May 29, 1995. The Commissioner now moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), contending that his decision was supported by substantial evidence in the record. For the reasons that follow, the Commissioner's motion is granted.

## BACKGROUND

On May 4, 1994, plaintiff, a twenty-eight year old diesel mechanic with a high school education, injured his back at work. As a diesel mechanic, plaintiff was required to stand for extended periods of time, as well as to crawl, bend, reach, kneel, and regularly lift and carry loads of up to 150 pounds. Plaintiff had worked as a mechanic from approximately 1983 to 1994.

About a month after his injury, plaintiff sought medical treatment from Dr. William Unis, an orthopedist. Dr. Unis's June 3, 1994 report indicates that plaintiff was suffering from lower back pain that radiated to his left buttock and inner thigh, with accompanying numbness, and morning back stiffness. Dr. Unis noted no reflex or sensory changes and no adductor tenderness although plaintiff reported pain in the area. A pelvic x-ray showed no evidence of fracture, dislocation, or arthritic changes. The hips and sacroiliac joints were normal. Dr. Unis then ordered a magnetic resonance imaging ("MRI") scan of the plaintiff's dorsal lumbar spine and an electromyogram ("EMG"). Review of the MRI revealed degenerative disc disease at L4–L5 and L5–S1, with two disc herniations. The larger of the two herniations, at L4–L5, was impinging on the right L5 nerve root within the thecal sac. Dr. Unis then referred plaintiff to Dr. Nicholas DePalma, a neurologist. In an April 1995 progress note, Dr. Unis observed that plaintiff was periodically symptomatic in his lower back and was taking Aleve as needed.

Plaintiff first saw Dr. DePalma on June 30, 1994. Plaintiff walked in an erect position and was able to heel and toe walk. His motor, sensory, and reflex functions were within normal limits. Straight leg raising on his right was 75 degrees and on his left 60 degrees. There was no evidence of atrophy or fasciculations. Dr. DePalma noted the results of the MRI and indicated that plaintiff had "radiographic and clinical evidence of radicular involvement." He recommended a course of conservative treatment and that the plaintiff walk and swim to strengthen his back. He advised that the plaintiff should not return to his occupation as a mechanic because of the heavy lifting required, and

suggested that plaintiff "either make a lateral move within the company to something more sedentary or be retrained for another occupation." He further opined: "At the present time the patient is totally disabled for his occupation."

Dr. DePalma reexamined plaintiff on September 15, 1994. At that time, he noted an improvement in plaintiff's condition but again recommended against plaintiff returning to his former occupation as a mechanic. He further urged that plaintiff be moved to a more sedentary occupation within the company or be retrained for more sedentary work.

On November 15, 1994, plaintiff was examined by Dr. T.V. Seshan, who found that plaintiff's active range of motion of the lumbosacral spine showed moderate limitation of motion with particular limitation of forward flexion to 30 degrees. Dr. Seshan noted that plaintiff's femoral stretch signs were negative and noted no motor or sensory deficits. Dr. Seshan opined that plaintiff was permanently disabled for his particular occupation, and recommended that plaintiff consider vocational retraining.

In a report dated January 31, 1996 submitted in support of plaintiff's application for disability benefits, Dr. Joseph A. Rossello, a chiropractor, indicated that he had treated plaintiff weekly from May 4, 1994 through August 26, 1995. During that period, plaintiff complained of low back pain and stiffness, jaw pain and discomfort radiating from the neck, headaches, and left leg numbness. Clinical tests revealed foraminal compression, decreased cervical range of motion, weakness of neck extension muscles, and cervical spasms. Dr. Rossello considered plaintiff's prognosis to be "guarded." He treated plaintiff with spinal manipulation and physical therapy but prescribed no medication. He believed that plaintiff's medical condition had lasted or was expected to last at least twelve months, and that plaintiff should lie down for 3–7 hours each day to relieve pain following any activity.

By checking off the appropriate categories, Dr. Rossello indicated that during a work day, plaintiff could sit, stand, and walk continuously, up to two hours each; that plaintiff could frequently lift and carry up to five pounds; and could occasionally lift and carry 6–10 pounds. Dr. Rossello further indicated that plaintiff should never bend, squat, crawl, climb, or reach; that plaintiff could use his hands for repetitive actions such as simple grasping, pushing and pulling, and fine manipulations; and could use his feet for repetitive movements. Dr. Rossello commented that plaintiff should be treated as needed in order to become stable and physically fit for work. Over the period of his treatment of plaintiff, Dr. Rossello also regularly reported to the Workers' Compensation Board that plaintiff suffered from a total disability. On January 27, 1996, Dr. Rossello wrote that plaintiff was totally disabled from the date of the accident, May 4, 1994, until May 30, 1995, and remained partially disabled.

On May 30, 1995, plaintiff returned to his former position as a mechanic on full duty for the same salary and for the same hours. He requires assistance to lift more than thirty pounds, and uses a chair with wheels to help him perform tasks at lower levels.

Plaintiff filed an application for disability insurance benefits on January 12, 1995. In his initial application, plaintiff noted that his job as a mechanic required heavy labor, and that "light duty" was not available. Plaintiff's initial application was denied. In his March 9, 1995 application for reconsideration, plaintiff stated: "I would gladly go back to work under light duty, unfortunately my company does not offer light duty." When his application for reconsideration was also denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). This hearing was held on February 1, 1996, before ALJ Christopher P. Lee. During the hearing, plaintiff testified that from May of 1994 through early 1995, he spent much of his time resting in bed, swimming, or watching television. He was able to dress and bathe himself, did his own laundry, and could drive himself to his various doctors' appointments.

The ALJ issued a written decision on March 25, 1996, in which he found that plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). The ALJ's decision became the final decision of the Commissioner when the Appeals Council

denied plaintiff's request for review on July 24, 1997. This action followed.

## DISCUSSION

### Standard of Review

■ The factual findings of the Commissioner are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Pratts v. Chater*, 94 F.3d 34, 36 (2d Cir.1996). The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The reviewing court " 'may only set aside a determination which is based on legal error or not supported by substantial evidence.' " *Pratts v. Chater*, 94 F.3d at 37 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam)).

### Disability Under the Act

■ Under the Act, a disability is defined as follows:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical ... impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423(d)(1)(A). In addition, a person is considered to be "under a disability" if:

> his physical ... impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the initial burden of showing that his impairment prevents him from returning to his prior type of employment. *Berry v. Schweiker*, 675 F.2d at 467. The claimant also bears the burden of showing that he is disabled within the meaning of the act. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.1983); *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983).

■ Our Circuit has adopted the Commissioner's five-step analysis for adjudication of disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir.1983) (quoting *Berry v. Schweiker*, 675 F.2d at 467); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proof as to the first four steps. If he proves that he cannot return to his past work, the Commissioner must consider whether there is other work that he can perform. *Rivera v. Schweiker*, 717 F.2d at 722–23; *Berry v. Schweiker*, 675 F.2d at 467. In making such a determination, the Commissioner should consider medical evidence, opinions of examining physicians, subjective evidence of pain and disability, and the claimant's age, educational background, and work history. *Mongeur v. Heckler*, 722 F.2d at 1037; *Car-*

*roll v. Secretary of Health and Human Services*, 705 F.2d at 642.

▮ In this case, the ALJ properly considered the five requisite factors and concluded that the plaintiff was not disabled under the meaning of the Act. Under the first factor, the ALJ found that the plaintiff had not engaged in substantial gainful activity between May 4, 1994 and May 29, 1995, the period of the claimed disability. With respect to the second and third factors, the ALJ found that while the plaintiff had a back disorder, he did not have an impairment or combination of impairments listed in Appendix 1 of the regulations so as to consider him *per se* disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

In order to bring plaintiff's impairment within Appendix 1, plaintiff had to show:

(C) Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

 1. Pain, muscle spasm, and significant limitation of motion in the spine; and

 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Section 1.05(C) of the Listings of Impairments. In this case, the record did not support a finding of "significant" limitation of motion in the spine or "significant" motor loss with muscle weakness, sensory or reflex loss. Specifically, plaintiff's medical records showed an active range of motion of the lumbosacral spine with only moderate limitations, and consistently normal motor, sensory, and reflex functions with no evidence of atrophy. The ALJ's finding that plaintiff did not have an impairment or impairments sufficient to consider him *per se* disabled was supported by substantial evidence and the

ALJ properly proceeded to the next step of the analysis.[1]

The fourth step of the inquiry involves a determination whether, notwithstanding the claimant's impairment, the claimant can perform his past work. In this case, based on the reports of plaintiff's evaluating physicians and the evidence presented at the hearing, the ALJ determined that during the period in question, plaintiff could not have performed his past relevant work. The burden then shifts to the ALJ to show that there exists other work that the plaintiff could perform.

In this case, in his analysis under the fifth step of the inquiry, the ALJ took into account the medical evidence provided through the reports of plaintiff's treating physicians and plaintiff's own testimony and found that plaintiff was at all pertinent times capable of performing sedentary work.[2] In reaching this conclusion, the ALJ first reviewed the physician reports of plaintiff's various medical examinations and noted that with one exception, the reports were consistent in finding that plaintiff could perform sedentary work. Dr. DePalma's July 1994 report, for example, recommended that plaintiff move to a more sedentary job within the company or be retrained for another occupation, a recommendation that was reiterated in his September 1994 report. Similarly, while Dr. Seshan concluded that plaintiff was permanently disabled from his particular occupation, he too suggested vocational retraining. In April 1995, Dr. Unis noted that plaintiff was only periodically symptomatic in his lower back and was taking Aleve only as needed. The ALJ also noted that while plaintiff indicated that he experienced considerable pain during the relevant time period, he was able generally to take care of his personal needs. In addition, the ALJ credited the statements plaintiff made in support of his application for disability benefits—that he would be eager to perform light duty if such a position

1. While plaintiff argues that the ALJ's failure to make specific findings demonstrating that he properly evaluated plaintiff's impairment under 1.05C mandates reversal, the ALJ's review of the medical evidence presented provides substantial evidence for his findings.

2. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles such as docket files, ledgers, and small tools. 20 C.F.R. § 404.1567. A certain amount of walking and standing is often required, even in a sedentary job. *Id.*

existed within the company.[3]

 Plaintiff contends that the ALJ erroneously failed to fully credit the reports of Dr. Rossello, a chiropractor, who indicated that plaintiff was not capable of performing sedentary work during the relevant time period.[4] The findings and opinions of a chiropractor, however, are not considered medical opinions and are not accorded controlling weight. *Diaz v. Shalala,* 59 F.3d 307, 313 (2d Cir.1995). Further, although Dr. Rossello indicated on plaintiff's Workers' Compensation forms that plaintiff was disabled, a finding of total disability for workers' compensation purposes is not binding on the Commissioner because of the differences in definitions of disability for purposes of social security and workers' compensation. *Rosado v. Shalala,* 868 F.Supp. 471, 473 (E.D.N.Y. 1994). Given the reports of all of plaintiff's doctors except for Rossello, together with plaintiff's own statements, the ALJ's finding that plaintiff was capable of sedentary work is supported by substantial evidence.

In addition to the ALJ's finding that plaintiff was capable of sedentary work, the ALJ's determination that the plaintiff was not disabled involved consideration of the combination of plaintiff's age, education, vocational history, and residual functional capacity under the relevant rules and regulations implementing the Act. *See* 20 C.F.R. §§ 404.1560, 404.1563, 404.1564, and 404.1565. "[W]here an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work," that individual's disability status may be determined by application of the rules to a combination of the individual's vocational factors (age, education, and work experience) and residual functional capacity (in this case, for sedentary work).

Rule 200.00(a) of the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Because the rules account for the existence of jobs in the national economy, a finding of "not disabled" includes a finding of the existence of jobs of that type in the national economy. *Id.* at Rule 200.00(b).

In this case, in addition to his finding that plaintiff had a residual functional capacity for the full range of sedentary work, the ALJ found that plaintiff was a younger individual with a high school education, whose previous work experience was for skilled or semi-skilled work, and whose skills were non-transferable. Consideration of these criteria under Rule 201.28 of the Medical Vocational Guidelines mandates a finding that plaintiff was not disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ's finding that plaintiff was not disabled, therefore, was supported by substantial evidence, and a finding of not disabled under this rule accounted for the existence of jobs in the national economy.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted. The Clerk of the Court is directed to enter judgment for the Commissioner.

**SO ORDERED.**

---

3. Plaintiff argues that the ALJ erred in failing to credit plaintiff's subjective claims of pain and his limited state of activity during the time period of alleged disability. The ALJ, however, considered plaintiff's claims and simply found them inconsistent with the medical evidence and plaintiff's own statements that he was "eager" to return to light duty. This Court will not second guess the ALJ's credibility determinations in this regard.

4. Plaintiff also argues that the ALJ failed to give appropriate weight to the opinion of Dr. Unis, plaintiff's treating physician. Dr. Unis's opinion, however, is consistent with the other medical opinions provided and plaintiff's contention is without merit.